IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MCKESSON MEDICAL-SURGICAL INC.,
a Virginia corporation,

    Plaintiff,

v().                                                         Case No. 3:17-CV-00631-REP

FLOWER ORTHOPEDIC CORPORATION,
a Pennsylvania corporation,

    Defendant.

**FLOWER ORTHOPEDICS' MEMORANDUM IN SUPPORT OF MOTION FOR ENLARGEMENT OF TIME TO FILE AN ANSWER AND COUNTERCLAIM**

The defendant, Flower Orthopedics Corporation, a Pennsylvania corporation ("Flower Orthopedics"), by counsel, pursuant to Fed. R. Civ. P. 6(b)(2) and Local Rule 7(F)(1), hereby submits the following Memorandum of Law in support of its Motion for Enlargement of Time to File its Answer and Counterclaim to the Complaint of the plaintiff, McKesson Medical-Surgical Inc. ("McKesson").

**I.    Introduction**

Flower Orthopedics and McKesson have a contract dispute arising out of an agreement for McKesson's distribution of Flower Orthopedics' products, and Flower Orthopedics' subsequent termination of that agreement. The parties have engaged in protracted settlement negotiations in an attempt to resolve their dispute. Flower Orthopedics engaged in these settlement negotiations in good faith, and with the expectation that the parties would reach some accord to bring finality to this matter. The difference between Flower Orthopedics and McKesson's last respective settlement offer and demand was $0; the only difference being in the payment and other non-pecuniary terms, not as to amount. Despite these developments,

1

McKesson ceased all communications in mid-October. The next date Flower Orthopedics heard from McKesson was November 6, 2017, on which date McKesson advised that it had requested that the Clerk enter default against Flower Orthopedics.

Flower Orthopedics has substantial, meritorious defenses and a claim in recoupment to McKesson's contract claim. Flower Orthopedics believed in good faith that a resolution to this matter was in hand, such that a voluntary dismissal of this lawsuit would be forthcoming. Flower Orthopedics takes this Court's filing deadlines seriously, and it regrets that it neglected to file responsive pleadings on or before the filing deadline. Under the operative legal standard, this neglect is excusable, and Flower Orthopedics now asks this Court to grant it leave to file an Answer and Counterclaim. Specifically, the excusable neglect standard is, at bottom, an equitable inquiry, and the equities strongly favor Flower Orthopedics here. Flower Orthopedics has acted in good faith to resolve this matter; the delay occasioned by Flower Orthopedics' delay in responding to this lawsuit is minimal; and McKesson has suffered no prejudice. Moreover, the law favors the adjudication of matters on their merits, not based on procedural default. Accordingly, Flower Orthopedics respectfully requests this Court's leave to respond to McKesson's lawsuit.

## II.   Factual History[1]

1.   This lawsuit arises out of a contract dispute between McKesson, a distributor of medical equipment, and Flower Orthopedics, a manufacturer of certain supplies.

2.   McKesson entered into a distribution agreement with Flower Orthopedics on March 8, 2013. The agreement was subsequently amended on September 1, 2013. Under the

---

[1] The factual history summarized here is a summary of the factual history stated in Flower Orthopedics' Memorandum of Law in Support of Motion to Set Aside Entry of Default filed contemporaneously with this motion.

amendment, McKesson became the exclusive supplier of Flower Orthopedics' goods in exchange for McKesson's agreement to meet certain volume requirements under the distribution agreement.

3. McKesson tendered deficient performance and failed to meet the volume requirements under the distribution agreement. Consequently, Flower Orthopedics exercised its right to terminate upon 120-days' notice. In addition to having to endure another 120 days of McKesson's deficient performance, Flower Orthopedics suffered significant damages as a result of McKesson's non-performance.

4. In May 2015, the parties entered into a Termination and Inventory Repurchase Agreement, followed by a First Amendment thereto (collectively, "Termination Agreement") on February 1, 2016. Flower Orthopedics did not release its claims against McKesson as part of the Termination Agreement.

5. Flower Orthopedics has struggled to meet the aggressive repurchase schedule set by the Termination Agreement, in large part due to McKesson's numerous breaches of the distribution contract. In March 2017, Flower Orthopedics began negotiating a possible resolution with McKesson.

6. This lawsuit was filed on September 19, 2017. At that time, settlement negotiations were ongoing. Since the filing of this suit, Flower Orthopedics and McKesson have engaged in substantial settlement negotiations. The difference between the parties' respective last offers is $0; the only detail being the payment terms and other non-pecuniary terms.

7. Based on these communications, it was Flower Orthopedics' expectation that this matter would resolve without further litigation.

8. On November 6, 2017, Flower Orthopedics was notified that McKesson had requested the Clerk to enter default against Flower Orthopedics.

**III.   Argument**

Fed. R. Civ. P. Rule 6(b)(1)(B) provides that the Court may, "for good cause, extend the time [for filing an Answer] . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The Supreme Court of the United States has defined "neglect" as encompassing "late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brusnwick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Whether neglect is "excusable" is "at bottom an equitable [inquiry], taking account of all relevant circumstances." *Id.* The Court has identified several factors pertinent to this inquiry, including (1) prejudice to the non-moving party; (2) the length of the delay and potential impact on the proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant has acted in good faith. *Id.* There exists a "general federal judicial policy of favoring resolution of cases on their merits and not on the basis of technical shortcomings." *Faulknier v. Heritage Financial Corp.*, Civil Action No. 87-0006-C, 1991 U.S. Dist. LEXIS 15748, at *15, 17 (W.D. Va. May 20, 1991) (Michael, J.)

As reflected in its Answer and Counterclaim attached to the motion as Exhibit A, Flower Orthopedics has substantial defenses and a claim in recoupment to McKesson's contract claim. Flower Orthopedics believed and expected that the parties were finalizing a settlement reflective of Flower Orthopedics' defenses and claim in recoupment. Flower Orthopedics has acted with the utmost good faith to attempt to bring about a resolution of this matter. To allow McKesson

to obtain a judgment upon a procedural technicality would confer a massive and undeserved windfall upon McKesson.

Essentially, McKesson cannot demonstrate a modicum of undue prejudice occasioned by the timing of this motion. Default was taken against Flower Orthopedics on November 6, 2017, and less than 10 days have passed since Flower Orthopedics appeared and requested this relief. Moreover, "delay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010). This is because "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Id.* at 419 (emphasis in original).

## IV. Conclusion

Flower Orthopedics is asking for nothing more than an opportunity to defend this action on its merits to bring about a just resolution. Flower Orthopedics takes this Court's deadlines very seriously, and it apologizes for failing to file a timely response. Because of the federal policy favoring the resolution of cases on the merits, and because McKesson can demonstrate no substantial undue prejudice,[2] we ask this Court to grant Flower Orthopedics leave to file its Answer and Counterclaim.

**Dated**: November 13, 2017

Respectfully submitted,

**FLOWER ORTHOPEDICS CORPORATION, a Pennsylvania corporation**

By Counsel

---

[2] There are more appropriate remedies than total forfeiture of this multimillion dollar lawsuit for any demonstrable prejudice incurred by McKesson in bringing its motion for default.

      /s/ Neil S. Talegaonkar
Neil S. Talegaonkar (VSB No. 44589)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: 804.649.7545
Facsimile: 804.780.1813
ntalegaonkar@t-mlaw.com
*Counsel for Flower Orthopedics Corporation*

Robert Mahoney (N.J. State Bar No. 20061985)
(Awaiting admission *pro hac vice*)
Norris McLaughlin & Marcus, P.A.
400 Crossing Blvd., 8th Floor,
P.O. Box 5933
Bridgewater, NJ 08807-5933
Telephone: 908.252.4158
Facsimile: 908.722.0755
rmahoney@nmmlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2017, a true and accurate copy of the foregoing was served via the Court's CM/EMF system on the following:

Christopher C. Spencer, Esq.
Mark C. Shuford, Esq.
Spencer Shuford LLP
6806 Paragon Pl., Suite 200
Richmond, VA 23230
E-mail: cspencer@spencershuford.com
E-mail: mshuford@spencershuford.com

Jeffrey Garfinkle, Esq.
Scott Smith, Esq.
Buchalter
18400 Von Karman Ave., Suite 800
Irvine, CA 92612
E-mail: jgarfinkle@buchalter.com
E-mail: Ssmith@buchalter.com

                                                   /s/ Neil S. Talegaonkar
Neil S. Talegaonkar (VSB No. 44589)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: 804.649.7545
Facsimile: 804.780.1813
ntalegaonkar@t-mlaw.com
*Counsel for Flower Orthopedics Corporation*